THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICH HALLMAN, an individual, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br> vs.<br><br>WELLS FARGO BANK, N.A.; and DOES 1 through 10, inclusive<br><br>        Defendant. | NO. 2:18-cv-01190 JLR<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>**NOTING DATE: JUNE 10, 2021** |

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

PLEASE TAKE NOTICE that on June 10, 2021 at 9:00 a.m., or as soon thereafter as the Parties may be heard, Plaintiff Rich Hallman ("Plaintiff"), individually and on behalf of other similarly situated employees, will and hereby does move the Court pursuant to Fed. R. Civ. P. (23)(e) for an order:

1.    Granting final approval of the Joint Stipulation of Class Action Settlement ("Settlement") reached in this case and the Settlement embodied therein as fair, reasonable, adequate, and in the best interests of the Class and that the requirements of due process have been met;

2.    Find that all of the elements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and that this action is properly certified as a class action on behalf of the following persons (the "Class"): All individuals who worked for Wells Fargo in the State of Washington in the job title of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between August 14, 2015 and March 2, 2021.

3.    Order that the representative plaintiff, Rich Hallman, is certified as the representative of the Class and that Class Counsel are appointed as sole counsel to the Class;

4.    Find that Class Counsel and the representative Plaintiff have fairly and adequately represented the Class with respect to the litigation and the settlement;

5.    Find that the notice and settlement administration program established and implemented pursuant to the Settlement Agreement satisfied Rules 23(e) of the Federal Rules of Civil Procedure and the requirements of due process; and

6.    Enter a final judgment and order dismissing this action and awarding attorneys' fees, costs, and incentive fee awards to Class Counsel and the Class Representatives, respectively, in accordance with the terms of the Settlement Agreement.

This Motion is based upon this Notice, the following Memorandum of Points & Authorities, the Agreement, the Declarations of Joshua Haffner and Paul Stevens filed herewith, all papers and pleadings on file in the action, and such oral argument as may be considered by the Court at the time of the hearing.

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

1

2   DATED:  April 28, 2021                    **HAFFNER LAW PC**

3                                        By:    /s/ Joshua H. Haffner
                                              Joshua H. Haffner, WSBA #53292
4                                             445 South Figueroa Street, Suite 2625
                                              Los Angeles, California 90071
5                                             Telephone: (213) 514-5681
                                              Facsimile: (213) 514-5682
6                                             Email:  jhh@haffnerlawyers.com

7

8   DATED:  April  28, 2021                   **STEVENS, LC**

9                                        By:    /s/ Paul D. Stevens
                                              Paul D. Stevens, (*Pro Hac Vice*)
10                                            1855 Industrial Street, Suite 518
                                              Los Angeles, California 90021
11                                            Telephone: (213) 270-1211
                                              Facsimile: (213) 270-1223
12                                            Email:  pstevens@stevenslc.com

13                                            *Attorneys for Plaintiff Rich Hallman*
                                              *and all others similarly situated*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND .................................................................................. 1

     A.    *Ibarra v. Wells Fargo* ................................................................ 2

     B.    *Kang v. Wells Fargo* ................................................................. 5

     C.    *Hallman v. Wells Fargo* ........................................................... 6

     D.    Global Settlement of the Wells Fargo Matters ......................... 8

     E.    Preliminary Approval And Notice Process ............................... 8

     F.    Objections To The Settlement, Requests For Exclusion, And Plaintiff's Due Diligence ............................................................................................ 8

III.   TERMS OF THE SETTLEMENT ....................................................... 9

IV.   ARGUMENT ..................................................................................... 11

     A.    Legal Standard For Final Approval of The Proposed Settlement Class ........... 11

     B.    This Case Is Appropriate For Class Action Treatment ................................. 12

         1.    The proposed Class is sufficiently numerous. ...................................... 12

         2.    Questions of law and fact are common to the Class. ........................... 12

         3.    Plaintiff's claims and defenses are typical to those of the Settlement Class. ........................................................................................................ 13

         4.    Plaintiff will adequately protect the interests of the Class. ................. 14

         5.    Common issues predominate over individualized ones. ..................... 14

         6.    A class action is superior to other methods for the fair and efficient adjudication of the claims of Plaintiff and the class. ............................ 15

     C.    Final Approval Is Appropriate Because The Proposed Settlement Is Fair, Adequate, and Reasonable ........................................................................ 16

         1.    The Settlement Is The Result Of Arms'-Length Negotiations ............ 17

         2.    The Settlement Provides The Class With Real Relief ......................... 18

     D.    Continued Litigation Poses Substantial Risks ............................................. 19

     E.    Plaintiff Performed Sufficient Research And Analysis To Adequately Assess The Settlement ....................................................................................... 20

     F.    The Recommendation Of Experienced Class Counsel Favors Final Approval Of The Settlement ........................................................................ 21

1

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

G.      The Reaction Of The Class Supports Approval Of The Settlement.................21

V.  CONCLUSION ..................................................................................................22

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).................................................... 11, 12

*Boyd v. Bechtel Corporation*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)................................... 21

*Butler v. Sears, Roebuck & Co*., 727 F.3d 796, 801 (7th Cir. 2013)...................................... 15

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................................... 18

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ............................................ 18

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ............................ 16, 17, 21

*Ferra v. Loews Hollywood Hotel*, 40 Cal.App.5th 1239 (2019) ................................................. 4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................ 11,12,13,22

*Hannon v. Dataproducts Corp.,*976 F.2d 497 (9th Cir. 1992) .................................................. 13

*Helde v. Knight Transp., Inc.*, 2016 WL 1687961 (W.D. Wash. Apr. 26, 2016)....................... 7

*Holly v. Alta Newport Hospital,* Case No.2:19cv07496, 2020 WL 1853308(April 10, 2020) 12

*Ibarra v. Wells Fargo Bank*, N.A. (9th Cir. No. 18-55626) ...................................................... 6

*In re Holocaust Victim Assets Litigation*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000)................... 18

*In re Lorazepam*, 205 F.R.D. 369 (D.D.C. 2002)............................................................... 18, 21

*In re Pacific Enter. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .................................................... 16

*In re Painewebber Ltd. Partnerships Litig.,* 117 F.3d 721 (2d Cir. 1997).............................. 22

*In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283 (3rd Cir. 1988) ...................... 19

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ....................... 20

*In re Warner Communications Sec. Litig.,* 798 F.2d 35 (2d Cir. 1986) .................................. 20

*Joint Exec. Bd. Of Culi-nary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 ............................................................................................................................................... 14

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012)............................... 15

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) .................................. 17

*Lopez Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wn.2d 649, 658 (2015) ............................ 7

*Luevano v. Campbell*, 93 F.R.D. 68 (D.D.C. 1981) ................................................................. 21

*M. Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 819 (D. Mass. 1987)............... 21

*Malta v. Fed. Home Loan Mortg. Corp.*, 2013 WL 444619,  (S.D. Cal. Feb. 5, 2013).......... 16

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ................................ 16, 19, 22

*Moses v. Wells Fargo*, N.D. Cal. Case No. 3:18-cv-00679 ......................................... 5

*MWS Wire Indus., Inc. v. California Fine Wire Co.*, 797 F.2d 799 (9th Cir. 1986) ............... 16

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) .................................................. 18

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................. 16, 17, 18

*Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762, 781-82 (2020) .................................... 2

*Rannis v. Recchia,* 380 F. App'x 646, 651 (9th Cir. 2010) ....................................... 12

*Sala v. National R.R. Passenger Corp.*, 721 F. Supp. 80 (E.D. Pa. 1989) ......................... 22

*Sampson v. Knight Transp., Inc.*, 193 Wn.2d 898 (2019) ........................................ 7, 19

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 ............................................ 13

*Stockwell v. City & Cty. of S.F.,* 749 F.3d 1107 .............................................. 13

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .............................. 16, 17

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .................................. 16

*Vaquero v. Stoneledge Furniture LLC*, 9 Cal.App.5th 98 (2017 ................................. 2, 3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ..................... 12

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910) ............................................ 16

*Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 849 (2002) ................................ 7

**Statutes**
Admin. Code §296-126-092(4) .................................................................... 6

FRCP 23(a)(2) ................................................................................. 12

Fed. R. Civ. P. 23(a)(4) ...................................................................... 14

Fed. R. Civ. Proc. 23(b) ...................................................................... 12

Fed. R. Civ. P. 23(b)(3) ...................................................................... 15

Fed. R. Civ. P. 23(b)(3)(D) ................................................................... 15

Fed. R. Civ. Proc. 23(e) ................................................................... 11, 16

Labor Code §203 ................................................................................ 5

Labor Code §226.7 .......................................................................... 2, 3, 4

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

1

## MEMORANDUM OF POINTS & AUTHORITIES

## I.      INTRODUCTION

By this motion, Plaintiff Rich Hallman ("Plaintiff") seeks final approval of the Stipulation of Class Action Settlement and Release for violations of Washington wage and hour laws brough on behalf of mortgage loan officers working for Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") from August 14, 2015 to March 2, 2021 and residing in the State of Washington (the "Class").

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff respectfully submits this memorandum in support of Plaintiff seeking final approval of the Settlement. The terms of the settlement are set forth in the Stipulation of Class Action Settlement and Release (the "Settlement").  *See* Dkt. 39-1, Exh. 1.  Preliminary approval of the Settlement was granted on March 2, 2021.  Dkt. 41.

As required by the Settlement, the Claims Administrator, Rust Consulting, Inc. ("Rust" or "Administrator") provided notice to the class members, and processed them in accordance with this Court's preliminary approval of the Settlement.  As if the filing of this motion there have been 0 objections and 1 opt-outs of the entire Class who received notice.

For the reasons stated herein, and in the accompanying declarations, Plaintiff and Class Counsel respectfully request that the Court grant final approval of the Settlement, grant Class Counsel's requested attorneys' fees and costs, and grant the requested class representative incentive award.

## II.      BACKGROUND

This settlement arises out of the litigation and mediation of four related wage and hour class actions against Wells Fargo: (1) *Ibarra v. Wells Fargo*, USDC, Central District of California, Case No. 2:17-cv-04344-PA; (2) *Kang v. Wells Fargo*, USDC, Northern District of California, Case No. 5:17-cv-06220-BLF; (3) *Moses v. Wells Fargo*, USDC, Northern District of California, Case No. 3:18-cv-06679 (now consolidated with *Kang*); and (4) *Hallman v. Wells Fargo*, USDC, Western District of Washington, Case No. 2:18-cv-01190-

1  JLR.  *Ibarra* and *Kang* includes approximately 6,660 individuals included in the proposed

2  Settlement Class.  *Hallman* includes 491.

3          These actions were brought on behalf of home mortgage consultants who worked for

4  Wells Fargo in California and Washington, and who were compensated under a pay plan

5  where they received advances against their commissions.  The home mortgage consultant

6  position was primarily a sales position with a primarily sales-driven pay structure.

7  Employees were paid by commissions plus a $12 per hour advance against future

8  commissions.  When those advances were paid, they were treated as a running deficit and

9  were offset against commissions earned in future pay periods.  In practical terms, this means

10  that pay structure functioned as a pure commission pay system, in which the advances were

11  treated as loans to be repaid from the employee's later sales-driven commissions.  For that

12  reason, Plaintiff alleged Wells Fargo's compensation scheme compensated these employees

13  *only* for their commission-generating sales activity, and did *not* compensate them for any of

14  their non-sales-related work activities or for their compensable rest break time.  As a result,

15  this pay structure violated California and Washington state laws governing rest break

16  compensation, minimum wages, and vacation pay. *See, e.g.*, *Vaquero v. Stoneledge Furniture*

17  *LLC*, 9 Cal.App.5th 98 (2017) (indistinguishable advance-against-commissions pay plan

18  violates rest break requirements because employees do not receive separate non-commission-

19  based compensation for their rest periods); *Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762, 781-

20  82 (2020) (employer may not "borrow" contractually promised wages from one work period

21  to meet minimum wage obligations in a different work period).  The following is the

22  background on the related actions:

23          **A.    *Ibarra v. Wells Fargo***

24          *Ibarra* was filed on March 17, 2017 in the Los Angeles Superior Court and was

25  thereafter removed to the U.S. District Court for the Central District of California (Case No.

26  2:17-cv-04344-PA-AS).  (*Ibarra* Dkt. 1-1).  In *Ibarra*, plaintiffs alleged a single claim of rest

27  break violations under Labor Code §226.7 on behalf of a class of HMCs employed by Wells

28  Fargo in California.  *Id.*  Plaintiffs alleged that under *Vaquero v. Stoneledge Furniture, LLC*, 9

2

Cal.App.5th 98 (2017), Wells Fargo's HMC commission-based compensation structure unlawfully failed to separately compensate class members for their non-working rest period time.  *Id.*  On July 25, 2017, pursuant to the Parties' stipulation, Judge Percy Anderson certified a class comprised of all HMCs employed by Wells Fargo in California at any time between March 13, 2013 and August 1, 2017.  (*Ibarra* Dkt. 18).

Following discovery, the parties brought cross-motions for summary judgment based on stipulated facts.  On January 19, 2018, the district court granted plaintiffs' motion and denied defendant's, concluding that Wells Fargo was liable for providing legally noncompliant rest breaks in violation of California law.  (*Ibarra* Dkt. 35).  The parties also conducted discovery regarding the damages calculations and deposed each other's damages experts.

The district court then determined the amount of damages owed to the class, based on the parties' stipulated facts and trial briefs.  The principal dispute between the parties concerned the interpretation of the premium pay language in Labor Code §226.7.  At the time, that question of California statutory interpretation had not been decided by any California appellate court.  In *Ibarra*, plaintiffs contended that calculation of Section 226.7 premium pay, defined as "one hour of additional pay at the employee's regular rate of compensation," must include all nondiscretionary remuneration to the employee (much as the term "regular rate of pay" is construed in wage-and-hour law), while Wells Fargo contended that the premium pay calculation must be based solely on the $12-per-hour advances against commissions provided by Wells Fargo.  (*Ibarra* Dkt. 50).

The parties stipulated that the classwide damages were $97,284,817.91 if plaintiffs' interpretation of Section 226.7 were correct, and $24,472,114.36 if Wells Fargo's interpretation were correct.  On May 8, 2018, Judge Anderson issued findings of fact and conclusions of law in which he ruled that plaintiffs' calculation was correct.  Judge Anderson

then entered judgment in favor of the class in the amount of $97,284,817.91.  (*Ibarra* Dkt. 50).[1]

Wells Fargo appealed the judgment, arguing that it was not liable to the class at all, and that even if liability could be established, Wells Fargo's calculation of premium pay owed to the class members should have prevailed.  *Ibarra* plaintiff retained experienced appellate counsel from Altshuler Berzon LLP to defend the trial court's judgment.

A few weeks before oral argument on Wells Fargo's appeal in the Ninth Circuit, a California Court of Appeal panel issued a decision in *Ferra v. Loews Hollywood Hotel*, 40 Cal.App.5th 1239 (2019), addressing the same issue of statutory interpretation of Labor Code §226.7 as a matter of first impression in the California appellate courts.  The panel majority ruled that premium pay under Section 226.7 is to be calculated based solely on an employee's base hourly rate of pay, not on all forms of nondiscretionary remuneration to the employee. *Ferra*, 40 Cal.App.5th at 1246-52.  In a comprehensive dissent, Justice Lee Smalley Edmon refuted the majority's arguments and explained that the Legislature and Industrial Welfare Commission intended premium pay under Section 226.7 and its Wage Order counterpart to be calculated based on all forms of nondiscretionary remuneration to the employee, just as overtime pay premium is calculated.  *Id.* at 1255-68.  The plaintiff in *Ferra* successfully sought review in the California Supreme Court.  *See* Cal. S.Ct. Case No. S259172.  *Ferra* is now fully briefed in the California Supreme Court and awaits the scheduling of oral argument. Class Counsel and appellate counsel for plaintiffs in *Ibarra* filed an amicus brief in support of reversal and provided additional assistance to counsel for *Ferra* with respect to her Supreme Court briefing.

On April 15, 2020, the Ninth Circuit entered a memorandum decision remanding *Ibarra* to the district court.  The Ninth Circuit affirmed the district court's liability finding; instructed the district court to order a distribution to the class of the $24,472,114.36 that the

---

[1] Judge Anderson rejected Wells Fargo's argument that 961 class members had not suffered any damages and should be excluded from any relief.  (*Ibarra* Dkt. 50).

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

parties had stipulated was owed if Wells Fargo's statutory interpretation were correct; and further instructed the district court to hold the case and the question of the remaining $72 million at issue pending the outcome of *Ferra* in the California Supreme Court (which could either resolve the parties' dispute over the intended meaning of Section 226.7 or require further litigation, given the factual differences between Wells Fargo's compensation scheme and the *Ferra* defendant's).   All further proceedings in *Ibarra* were stayed pending the resolution of *Ferra* in the California Supreme Court.  (*Ibarra* Dkt. 90).  Judge Anderson subsequently transferred *Ibarra* to the Kang Court, pursuant to the Parties' post-settlement stipulation.

> ### B.   *Kang v. Wells Fargo*

The consolidated cases of *Kang* and *Moses* are follow-on cases to *Ibarra* that encompass additional class members in the rest break class and additional claims on behalf of all HMCs, including the *Ibarra* class members.

*Kang* was filed in the Northern District of California on October 27, 2017.  The original *Kang* complaint alleged claims that Wells Fargo's HMC pay structure gave rise to minimum wage and vacation pay violations, as well as a claim for waiting time penalties under Labor Code §203.  These claims were alleged on behalf of a class of HMCs who had worked for Wells Fargo in California on or after October 23, 2013.  (*Kang* Dkt. 1).  The additional claims asserted in *Kang* arose from the same commission-based HMC pay structure that gave rise to the rest period claims in *Ibarra* and *Kang*.

In 2018, *Kang* was consolidated in this Court with *Moses v. Wells Fargo*, N.D. Cal. Case No. 3:18-cv-00679.  *Moses* alleged a rest break claim on the same legal theory asserted in *Ibarra* on behalf of HMCs who had worked for Wells Fargo in California at any time between August 2, 2017 (the day after the *Ibarra* class period closed) and March 31, 2018 (the date that Wells Fargo discontinued its pay practice that was alleged to have violated California rest period law).  *Moses* also asserted a claim for PAGA penalties based on the underlying Labor Code violations alleged in *Moses* and *Kang*.

On February 27, 2019, plaintiffs filed a consolidated First Amended Class Action Complaint in *Kang*, encompassing all claims pleaded in *Kang* and *Moses*.  (*Kang* Dkt. 64).  On February 27, 2019, the Court granted plaintiffs' motion to certify a class of HMCs who worked for Wells Fargo in California from October 23, 2013 through the date that class notice was mailed.  (*Kang* Dkt. 63).  The Court also certified a rest period subclass consisting of HMCs who worked at any time between August 2, 2017 and March 31, 2018.  (*Kang* Dkt. 63)  The *Kang* Court also stayed the case pending the Ninth Circuit's ruling in *Ibarra*.  (*Kang* Dkt. 63).  On July 23, 2020, after the parties notified this Court regarding the Ninth Circuit's decision in *Ibarra*, the Court stayed *Kang* again through October 31, 2020, pending a planned global mediation of *Ibarra* and *Kang*.  (*Kang* Dkt. 85).

### C.    *Hallman v. Wells Fargo*

This matter was filed on August 14, 2018 and is an action on behalf of Washington home mortgage consultants and asserts rest break, overtime, minimum wage, and vacation pay claims under Washington state law.  The Plaintiff in *Hallman* sought certification of a class covering the period from August 14, 2015 through the date of class notice.  There are 491 potential class members, 280 of whom signed individual arbitration agreements.

On November 12, 2018, Wells Fargo filed its Answer to the Complaint and on March 25, 2019 the Court stayed this case pending the Ninth Circuit's decision in *Ibarra v. Wells Fargo Bank*, N.A. (9th Cir. No. 18-55626). Following the Ninth Circuit's decision in *Ibarra*, the Court lifted the stay on June 16, 2020 and shortly thereafter, the Court issued an amended scheduling order under the Federal Rules of Civil Procedure 16(b) and 23(d)(2) requiring Plaintiff to complete class certification discovery by March 22, 2021 and to move for class certification by April 21, 2021.   The particular claims are as follows:

This matter sought to recover rest break compensation under Wash. Admin. Code §296-126-092(4), which provides that "Employees shall be allowed a rest period of not less than ten minutes, *on the employer's time*, for each four hours of working time."  (Emphasis added.)  Similar to California law as explained in *Vaquero*, Washington's rest period law requires employers to provide incentive-pay workers separate compensation for their rest

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

periods, to eliminate the economic incentive those workers would otherwise have to skip their rest breaks. *Lopez Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wn.2d 649, 658 (2015) (piece rate agricultural workers must receive separate compensation for rest periods); *see also Helde v. Knight Transp., Inc.*, 2016 WL 1687961 (W.D. Wash. Apr. 26, 2016) (piece rate truck drivers; same).

This matter also alleged a related overtime claim under Washington law.  Because Wells Fargo's failure to provide class members with rest periods "on the employer's time" results in those employees working through their rest periods, Wells Fargo is required to compensate the employees for that additional time at the statutory overtime rate, if that additional time crosses the line into overtime hours. *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 849 (2002).

This matter's minimum wage claim rests upon the Washington Minimum Wage Act ("MWA"), which provides that "every employer shall pay to each of his or her employees ... wages at a rate of not less than [the applicable minimum wage] per hour." RCW 49.46.020(1)(a)-(d).  After this action was filed, the Washington Supreme Court issued its decision in *Sampson v. Knight Transp., Inc.*, 193 Wn.2d 898 (2019).  In *Sampson*, the Washington Supreme Court interpreted Wash. Admin. Code §296-126-021[2] to permit an employer to comply with its state-law minimum wage obligations to piece rate workers by averaging all of an employee's compensation across all hours worked and held that this interpretation was consistent with the MWA.  *Id*. The same analysis may apply to commissioned salespersons like the class members in *Hallman*.

Finally, this matter also asserts a claim for willful refusal to pay vacation pay on the same theory as in *Kang/Moses.*

---

[2] Wash. Admin. Code § 296-126-021 provides: "Where employees are paid on a commission or piecework basis, wholly or partially, (1) The amount earned on such basis in each work-week period may be credited as a part of the total wage for that period; and (2) The total wages paid for such period shall be computed on the hours worked in that period resulting in no less than the applicable minimum wage rate."

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

**D.     Global Settlement of the Wells Fargo Matters**

On October 21, 2020, following a day-long mediation with the assistance of mediator David Rotman, the Parties reached a global settlement of all of the closely related claims in *Ibarra, Kang and this matter*.  (Haffner Decl.).  The parties previously mediated in March 2018 following the ruling on liability in *Ibarra* (Haffner Decl.).  Following the mediation, the Parties engaged in continued arms-length negotiations over the next two months to complete a long-form settlement agreement.  For purposes of mediation, Class Counsel analyzed damages data for all of the approximately 491 individuals included in the proposed Settlement Class, not just those individuals in the previously certified classes in *Ibarra* and *Kang*. (Haffner Decl.).

**E.     Preliminary Approval And Notice Process**

On March 2, 2021, this Court granted preliminary approval of the settlement. Dkt. 41. The March 2, 2021 Order directed that a claims administrator be appointed to prepare and send the Class Notice of the propose Settlement to the Class.   Rust Consulting, Inc.. ("Rust") was appointed as Claims Administrator.  Rust printed and disseminated the approved Class Notices to the Class on March 30, 2021.  (Declaration of Jennifer Mills, ¶10). Of the 497 notices mailed, 10 were returned as undeliverable without a forwarding address. *Id*. at ¶ 12. Rust performed a skip trace and addresses were obtained and notice re-mailed.  *Id*. at ¶ 12. As of the date of the Administrator's declaration, 0 notices remain undeliverable. *Id*. at ¶ 12.

Pursuant to the terms of the preliminarily approved settlement, Class Members who wish to request exclusion were to mail the request in written form and postmarked no later than 45 calendar days from the date the Class Notice was mailed. The last day to request exclusion is May 14, 2021.  (Dkt. 40).

**F.     Objections To The Settlement, Requests For Exclusion, And Plaintiff's Due Diligence**

0 objections to the settlement have been filed, and only 1 Class Member has submitted Requests for Exclusion from the class.

Class Counsel conducted their own investigation through formal and informal discovery, mediation, review of Defendant's documents, and interviews with Plaintiffs prior to entering into this stipulation and settlement.  Haffner Decl., ¶¶4, 5 and 7.  Plaintiff conducted a comprehensive factual and legal investigation into matters set forth in the ligation.  The parties also engaged in arms-length mediation with David Rotman, an experienced mediator with extensive work in wage and hour class actions.  Haffner Decl., ¶5.  This investigation, mediation, and prosecution of this case has included, among other things, (a) multiple conferences with Plaintiff; (b) informal discovery; (c) analysis of the legal positions taken by Defendant; (d) investigation into the viability of class treatment of the Claims asserted in this Action; (e) preparation of pleadings; (f) retention of a loss prevention expert; (g) analysis of potential class-wide damages; (h) research of the applicable law with respect to the Claims asserted in the Action and the potential defenses, thereto; and (j) assembling data for calculating damages. Haffner Decl., ¶7.

The parties have engaged in sufficient investigation, analysis, and discussions to assess the relative merits of the claims of Plaintiff and Defendant's defenses to them.  Plaintiff has also been in constant communications with Defendant and the Claims Administrator since the preliminary approval hearing to ensure that the settlement and settlement procedures are fair, reasonable and adequate.

### III.    TERMS OF THE SETTLEMENT

Overview. The global settlement amount of TWO MILLION ($2,000,000) will resolve all claims in this case. This Gross Fund Value (GFV) will be used to fund the settlement class claims, attorney's fees, litigation cost, administrator costs, and class member incentive payments for class representative Rich Hallman.

Class members who do not opt out of the settlement will be mailed a settlement payment automatically, without having to file a claim.  (Settlement ¶24, Settlement Exhibit A, ¶9A).  All settlement funds are non-reversionary.  (Settlement ¶ 9).  Settlement checks will be negotiable for 180 days after mailing.  (Settlement ¶22).  Any residual will be redistributed to class members who cashed their initial settlement checks.  (Settlement ¶21).

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

Settlement Class Definition.  The overall settlement class encompasses all individuals who worked for Wells Fargo in the State of Washington in the job title of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time between August 14, 2015 and the date of preliminary approval of this class settlement.

Settlement Payments to Class Members.  The net settlement proceeds (after deduction attorneys' fees, costs, administrative costs, and service awards to the named plaintiff) will be distributed in the following manner: the Settlement Administrator will calculate the Individual Settlement Payment amount for each Settlement Class Member.  To make this calculation (the "Settlement Formula"), the Settlement Administrator shall calculate the total aggregate number of Qualifying Workweeks attributable to all Settlement Class Members ("Total Qualifying Workweeks").  "Qualifying Workweeks" means all weeks in which a Settlement Class Member worked for Wells Fargo in the State of Washington in the job title of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr. at any time during the period from between August 14, 2015 and the date of preliminary approval of this class settlement, excluding weeks when the Settlement Class Member was on leave for the entire week.  The value of an individual Qualifying Workweek shall then be determined by dividing the proceeds of the NFV by the Total Qualifying Workweeks, resulting in the "Qualifying Workweek Value."  Each Settlement Class Member's Individual Settlement Payment shall then be determined by multiplying the individual Settlement Class Member's number of Qualifying Workweeks by the Qualifying Workweek Value.

Class Counsel Attorneys' Fees and Expenses and Representative Service Awards.

Class Counsel will seek up to one-third of the gross settlement fund ($666,666.67) for reasonable attorneys' fees and up to $50,000 in actual documental litigation costs Settlement ¶11.  Class Counsel will seek $10,000 for a Representative Service Award for Plaintiff Rich Hallman.  (Settlement ¶12).  If the Court does not approve the full amounts requested for attorneys' fees and expenses and class representative service awards, any appeals will not

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

delay the distribution of individual class member settlement payments.  (Settlement ¶19).
Any amounts not approved by the Court for attorneys' fees and expenses and class
representative service awards will be added to the net settlement fund for distribution to class
members.  (Settlement ¶11 and 12).

Releases.  Settlement Class Members will release all claims that were or could have
been brought arising from the factual allegations or legal claims asserted in the operative
complaint.  (Settlement ¶28).

Administrative Costs.  The Parties have appointed Rust Consulting to serve as the
Settlement Administrator.  (Settlement ¶13).  Rust has estimated the costs of administering
the Settlement to not exceed $50,000.00.  (Settlement ¶13).

Notice.  Notice was provided by U.S. Mail to the last known address of each class
member from Wells Fargo's business records, as updated through the U.S. Postal Service
National Change of Address database. The deadline for objecting to or excluding oneself from
the settlement is May 414, 2021 – 45 days after the notice was mailed.  (Settlement ¶24).  The
settlement provides for skip tracing to locate class members whose notices are returned as
undeliverable, and an extended response deadline for class members whose notices are re-
mailed.  (Settlement ¶24)

## IV.    ARGUMENT

### A.  Legal Standard For Final Approval of The Proposed Settlement Class

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that
effects the dismissal of a class action.  Settlement agreements reached before class
certification must be reviewed as to both the requirements for class certification and the
fairness of the settlement. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621-22 (1997).
First, the district court must determine whether a certifiable class exists. *Id*.  Then, "the
district court [must] determine that a class action settlement is fair, adequate, and reasonable."
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Joel A. v. Giuliani*,
218 F.3d 132, 138 (2d Cir. 2000).

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

**B.  This Case Is Appropriate For Class Action Treatment**

Class certification of a class is appropriate here.  The usual standards for Rule 23(a) and (b) certification apply in the settlement context.  A class action is to be certified where, as here, the class plaintiff satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). Here, in connection with the Settlement Agreement the parties agreed for the purposes of this settlement that all class issues have been met.  *See* Dkt. 40, p. 17-20.

**1.  The proposed Class is sufficiently numerous.**

While there is no fixed point where the numerosity requirement is met, Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). Generally, Courts will find numerosity is satisfied where a class includes at least 40 members. *Holly v. Alta Newport Hospital,* Case No.2:19cv07496, 2020 WL 1853308, at *7 (April 10, 2020) (citing *Rannis v. Recchia,* 380 F. App'x 646, 651 (9th Cir. 2010)). Numbering approximately 491 individuals, the proposed settlement class satisfies Rule 23's numerosity requirement.

**2.  Questions of law and fact are common to the Class.**

Certification is appropriate under the commonality prong when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[I]t is not necessary that all question of law and fact be common." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality may be satisfied by a single common question of law or fact. *Id.* (stating that either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion).) In *Wal-mart Stores v. Dukes,* the Supreme Court stated class "claims must depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

Here, the theory of recovery and common questions of law and fact are based on the alleged unlawfulness of Wells Fargo's pay plan, which applies to all proposed Class members.  Thus, as to all proposed class members, Plaintiff asserted that the pay plan's "advance" against commission fails to compensate for non-productive, or non-sales, hours worked.  Whether the commission-based pay plan compensates for non-productive, or non-sales, hours worked, is a common issue of law and fact that applies across the board for all Class members.  Similarly, whether Wells Fargo's pay plan properly compensates Class members for PTO is a common issue of law and fact amongst all Class members.   Thus, the determination of these issues will "be so for all class members or for none; their claims rise and fall together." *Stockwell v. City & Cty. of S.F., 74*9 F.3d 1107, 1115 (9th Cir. 2014).  The Ninth Circuit in *Vaquero v. Ashley Furniture Industries, Inc.,* 824 F.3d 1150 found just such conditions to establish the requisite commonality ("one type of injury allegedly inflicted by one actor in violation of one legal norm against a relatively small number of class members who all generally performed the same work.") *Vaquero v. Ashley Furniture Industries, Inc.,* 824 F.3d 1150, 1154 (9th Cir. 2016). Accordingly, this action satisfies commonality under section 23(a)(2).

### 3.  Plaintiff's claims and defenses are typical to those of the Settlement Class.

For typicality to exist, the class representative plaintiff must have claims "reasonably co-extensive with those of absent class members," but need not be "substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).  The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." *Hannon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).  "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005).

1    Here, Plaintiff's claims arise out of the same pay plans, policies and procedures, and

2    involve the same course of conduct by Wells Fargo and same legal theories.  Thus, the

3    typicality requirement is met.

4        **4.  Plaintiff will adequately protect the interests of the Class.**

5        The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic

6    or conflicting interests between named plaintiffs and their counsel and the absent class

7    members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action

8    on behalf of the class. Fed. R. Civ. P. 23(a)(4); (*see also Meyer*, 707 F.3d at 1041–42 (9th

9    Cir. 2012) (upholding typicality finding).

10       Here, Plaintiff is a member of the Class who has experienced the same injuries and

11   seeks, like other Class Members, compensation for Wells Fargo's violation of Washington's

12   labor laws. As such, his interests and the interests of his counsel are not inconsistent with

13   those of other Class Members.

14       Further, counsel for Plaintiff have decades of combined experience as vigorous class

15   action litigators including in this type matter and are therefore well suited to advocate on

16   behalf of the Class. (*See* Haffner Decl., and Stevens Decl.).  Thus, Plaintiff satisfies the

17   requirement of adequacy.

18       **5.  Common issues predominate over individualized ones.**

19       In addition to the prerequisites set forth in Rule 23(a), a class must also constitute one

20   of the types of classes under Rule 23(b).  Under Rule 23(b)(3), certification is appropriate if:

21   (i) questions of law or fact common to the members of the class predominate over any

22   questions affecting only individual members; and (ii) a class action is superior to other

23   available methods for the fair and efficient adjudication of the controversy.  *Local Joint Exec.*

24   *Bd. Of Culi-nary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63

25   (9th Cir. 2001).  As set forth below, this case meets the requirements for certification under

26   Rule 23(b).

27       The predominance requirement "tests whether proposed classes are sufficiently

28   cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing

Wright, et al., *Fed. Prac. and Proc.* § 1777, p. 518–19 (2d ed. 1986)). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting *Hanlon*, 150 F.3d at 1022). To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

Here, the central legal issue is whether Wells Fargo's common employment and pay plan properly compensated employees properly. This is sufficient to satisfy the predominance requirement for purposes of settlement. *See* Fed. R. Civ. P. 23(b)(3); *Vaquero* 824 F.3d at 1150.

### 6. A class action is superior to other methods for the fair and efficient adjudication of the claims of Plaintiff and the class.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because Plaintiff seeks to certify a class in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

1   there be no trial."); see also *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-CV-1290 BEN

2   NLS, 2013 WL 444619, at *3 (S.D. Cal. Feb. 5, 2013) (superiority met where

3   "considerations of judicial economy favor litigating a predominant common issue once in a

4   class action instead of many times in separate lawsuits" and the "small individual claims of

5   class members" made it "unlikely that individual actions will be filed"). For these reasons,

6   certification of the Settlement Class for purposes of settlement is appropriate. See also

7   *Vaquero,* 824 F.3d at 1154. Because the claims are being certified for purposes of settlement

8   and there are no issues with other actions or manageability, resolution of thousands of

9   claims in one action is far superior to individual lawsuits and promotes consistency and

10  efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3)

11  **C.  Final Approval Is Appropriate Because The Proposed Settlement Is Fair,**

12  **Adequate, and Reasonable**

13       The "overriding public interest in settling and quieting litigation" is "particularly true

14  in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)

15  (footnote omitted).  Without question, "[c]ompromises of disputed claims are favored by the

16  courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also MWS Wire Indus.,*

17  *Inc. v. California Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986); *Officers for Justice v.*

18  *Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("Voluntary conciliation and

19  settlement are the preferred means of dispute resolution").  Class actions are particularly

20  amenable to settlement because of the uncertainty of the outcome, the difficulty of proof and

21  the typical duration of such litigation.  *Van Bronkhorst*, 529 F.2d at 443.

22       Under Federal Rule of Civil Procedure 23(e), a court should approve the settlement of

23  a class action if it is "fair, adequate and reasonable."  *In re Pacific Enter. Sec. Litig.*, 47 F.3d

24  373, 377 (9th Cir. 1995); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d at 625;

25  *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

26       The authority to approve a class settlement is committed to the sound discretion of the

27  trial court. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v.*

28  *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd without op.*, 661 F.2d 939

(9th Cir. 1981).  The Ninth Circuit has prescribed a non-exhaustive list of relevant factors that a trial court may consider in evaluating the fairness of a class action settlement, which includes the following:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

While the district court exercises discretion in approving a settlement, the court's evaluation of a proposed class settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983).  In *Officers for Justice*, the Ninth Circuit further explained:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Id*.; (citations omitted).

An examination of all of the relevant factors shows that this settlement is fair, adequate and reasonable.

### 1.  The Settlement Is The Result Of Arms'-Length Negotiations

A proposed settlement is presumed to be fair and reasonable when it is the result of arm's-length negotiations.  *See* Newberg, § 11.41; *see also Class Plaintiffs v. City of Seattle*,

**MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam*, 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations'") (internal citations omitted); *In re Holocaust Victim Assets Litigation*, 105 F. Supp. 2d 139,145-46 (E.D.N.Y. 2000) (stating that in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached").

Here, the parties engaged in arms-length mediation with David Rotman on October 21, 2020. Dkt. 39-2, ¶5. The investigation, mediation, and prosecution has included, among other things, (a) multiple conferences with Plaintiff; (b) informal discovery; (c) analysis of the legal positions taken by Defendant; (d) investigation into the viability of class treatment of the Claims asserted in this Action; (e) preparation of pleadings; (f) retention of a loss prevention expert; (g) analysis of potential class-wide damages; (h) research of the applicable law with respect to the Claims asserted in the Action and the potential defenses, thereto; and (j) assembling data for calculating damages. Haffner Decl. ¶7. Thus, the parties have engaged in sufficient investigation, informal discovery, and discussions to assess the relative merits of the claims of Plaintiffs and defenses to them and arrived at the current settlement with the assistance of a highly experienced mediator.

## 2. The Settlement Provides The Class With Real Relief

The reasonableness of the proposed settlement cannot be determined by the application of a mathematical formula. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In fact, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n.*, *supra*, 688 F.2d 615; *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974). Here, each Class Member will receive a pro rata share based on the number of participating Class Members. The average recovery will be approximately $2,461.44 with those Class Members who worked the entire appliable period receiving approximately $6,483.80. Thus, the Class is receiving real and significant relief for the claims in this case.

Thus far, there are ) (0.00%) objectors to this Settlement. (Mills Decl., ¶ 15)  Further, only 1 (0.00%) of the 497 Class Members have submitted Requests for Exclusion from the class. (Mills Decl., ¶ 16). This is an indicator of the fairness and reasonableness of the settlement.  *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) ("the small number of class members indicating their disapproval of the settlement, here only one percent, also indicates its acceptability").  Under all of the circumstances present here, the Settlement represents a fair recovery for Plaintiff and the Class.

**D.  Continued Litigation Poses Substantial Risks**

An important factor in evaluating the fairness of the settlement is the risk involved in pursuing the litigation.  In negotiating the Settlement, Plaintiff was aware of the difficulties and risks associated with this case.  Indeed, one such risk has already gone against Plaintiff and the Class during the litigation.  After this action was filed, the Washington Supreme Court issued its decision in *Sampson v. Knight Transp., Inc.*, 193 Wn.2d 898 (2019).  In *Sampson*, the Washington Supreme Court interpreted Wash. Admin. Code §296-126-021 to permit an employer to comply with its state-law minimum wage obligations to piece rate workers by averaging all of an employee's compensation across all hours worked and held that this interpretation was consistent with the MWA.  *Id*. The same analysis may apply to commissioned salespersons like the Class Members and, if applied, would drastically reduce if not doom Plaintiff's minimum wage claim.

 Therefore, in assessing the settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283, 317 (3rd Cir. 1988) (noting that "settlement provide[s] class members the opportunity to file claims immediately after court approval of the settlement, rather than waiting through what no doubt would be protracted litigation").

Plaintiff and Class Counsel believe that the claims asserted in this action have merit. However, they also recognize and acknowledge the expense and delay necessary to prosecute this action through trial and, potentially, appeals.  Each of which would take years to resolve.

Moreover, the outcome of trial and any appeals is uncertain and the risk of continued litigation includes the possibility that there is ultimately no recovery for Plaintiff and the Class. Class Counsel has taken into account the uncertainty and risk surrounding this complex class action in arriving at the instant Settlement.

Indeed, if this case would to proceed to trial, Plaintiff and the Class would still face significant hurdles, likely including a contested motion for class certification, a motion for summary judgment, and lengthy trial. While Class Counsel believes that it would prevail on all of these issues, they do represent significant obstacles that must be taken into account in the evaluation of the reasonableness of the Settlement. With these issues in mind, Class Counsel and Plaintiff believe that the settlement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay and Defendant's asserted defenses

### E. Plaintiff Performed Sufficient Research And Analysis To Adequately Assess The Settlement

"[T]he stage of the proceedings and the amount of discovery completed" is a factor that Courts consider in determining the fairness, adequacy, and reasonableness of a settlement. *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (citations omitted).

This Settlement follows substantial factual investigation and expert and legal analysis of the claims and defenses of the parties, as well as motion practice, and was reached only after Class Counsel had conducted extensive inquiry. Dkt. 39-2, ¶5; Haffner Decl. ¶¶4, 7. Such due diligence includes a significant investigation into the facts and the law, including conducting formal and informal discovery, reviewing extensive information, interviewing and reviewing records and documents of Plaintiff and engaging in extensive settlement discussions. *Ibid.* Class Counsel had more than adequate information to make an informed judgment concerning the reasonableness of the Settlement Agreement.

Based upon the foregoing, Class Counsel has concluded that a settlement according to the terms and conditions set forth in the agreement would be fair, adequate and reasonable,

and in the best interests of the Class.  *See In re Lorazepam*, *supra*, 205 F.R.D. at 377 (citing *Luevano v. Campbell*, 93 F.R.D. 68, 86 (D.D.C. 1981) ("In evaluating the fairness and adequacy of a settlement, it is important to consider whether the settlement was reached after extensive factual development, so that counsel on both sides would have had information sufficient to make a reasonable assessment of their risks of litigation")).

**F.   The Recommendation Of Experienced Class Counsel Favors Final Approval Of The Settlement**

Class Counsel and counsel for Defendant -- experienced class action attorneys -- entered into the Settlement Agreement after extensive, arduous, arm's length negotiations following substantial factual investigation and legal analysis of the claims and defenses of the parties.  Dkt. 39-2, ¶5; Haffner Decl. ¶¶4, 7.  Class Counsel believes the settlement is fair, adequate, and reasonable.  Haffner Decl., ¶18.

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corporation*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  The presumption of reasonableness is fully supported in this action because the settlement is the product of substantial arm's-length negotiations conducted by capable counsel who are well experienced in class action litigation.  *See M. Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").

This Action has been litigated by experienced and competent counsel on both sides of the case.  The settlement negotiations were protracted and thorough.  Class Counsel are well-known for their experience and success in class actions.  That qualified and well-informed counsel operating at arm's-length, endorse the settlement as being fair, adequate, and reasonable and adequate militates strongly in favor of this Court's approval of the settlement.

**G.  The Reaction Of The Class Supports Approval Of The Settlement**

It is well settled that "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Sala v. National R.R.*

1  *Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989).  In fact, the lack of objections does

2  provide some evidence of the fairness of the settlement.  *In re Painewebber Ltd. Partnerships*

3  *Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

4       Here, thus far, there has not been one single objection to the settlement and only one

5  person of the 491 class members have opted out of the settlement.  (Mills Decl., ¶ 15). This

6  constitutes some evidence that this settlement is fair, adequate, and reasonable.  *Hanlon v.*

7  *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Marshall v. Holiday Magic, Inc.*, 550

8  F.2d 1173, 1178 (9th Cir. 1977) ("[T]he small number of class members indicating their

9  disapproval of the settlement, here only one percent, also indicates its acceptability.")

10                          **V.  CONCLUSION**

11       For the foregoing reasons, the Court should grant preliminary approval of the

12  proposed Settlement as set forth in the [Proposed] Order submitted herewith; order notice to

13  be distributed to the Settlement Class; and set a schedule for further settlement approval

14  proceedings and a final approval hearing.

15  DATED:  April 28, 2021                 **HAFFNER LAW PC**
16
17                             By:    /s/ Joshua H. Haffner
                                    Joshua H. Haffner, WSBA #53292
18                                  445 South Figueroa Street, Suite 2625
                                    Los Angeles, California 90071
19                                  Telephone: (213) 514-5681
                                    Facsimile: (213) 514-5682
20                                  Email:  jhh@haffnerlawyers.com

21  DATED:  April 28, 2021                 **STEVENS, LC**
22
23                             By:    /s/ Paul D. Stevens
                                    Paul D. Stevens, (*Pro Hac Vice*)
24                                  1855 Industrial Street, Suite 518
                                    Los Angeles, California 90021
25                                  Telephone: (213) 270-1211
                                    Facsimile: (213) 270-1223
26                                  Email:  jhh@haffnerlawyers.com

27                                  *Attorneys for Plaintiff Rich Hallman*
                                    *and all others similarly situated*
28

                                    22